# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEPHANIE KUTELLA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10 C 3204 |
| ) | |
| MARTIN VENIT, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Stephanie Kutella has sued her former employer, Martin Venit, alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, violations of the Illinois Wage Payment and Collection Act, breach of contract, and intentional infliction of emotional distress. Venit has moved for summary judgment on Kutella's Title VII claim. For the reasons stated below, the Court grants the motion.

## Background

Venit has worked as a trader at the Chicago Mercantile Exchange (CME) since 2007. Venit hired Kutella as a clerk in October 2008. Kutella alleges that, during the course of her employment, Venit sexually harassed her, failed to pay her, and intentionally caused her to experience severe emotional distress. She resigned in March 2009.

Venit has moved for summary judgment on Kutella's Title VII claim. He argues that Kutella has offered insufficient evidence to support the contention that he qualifies

as an "employer" within the meaning of Title VII.

## Discussion

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the Court draws reasonable inferences in favor of the non-moving party. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Title VII prohibits employers from discriminating against employees based on sex. 42 U.S.C. § 2000e-2(a). The Act defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." *Id.* § 2000e(b). "[T]he threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006).

"The United States Supreme Court has held that under 42 U.S.C. § 2000e(b) the payroll method should be used to determine whether an employment relationship exists between an individual and the alleged employer." *Mizwicki v. Helwig*, 196 F.3d 828, 831 (7th Cir. 1999) (citing *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 205-07

(1997)).  "Under the payroll method set forth in *Walters*, the plaintiff is required to show that at least fifteen employees were on the defendant's payroll for twenty weeks during the year of, or preceding, the alleged harassment."  *Id.* at 832 (citations omitted); *see also Smith v. Castaways Family Diner*, 453 F.3d 971, 974 (7th Cir. 2006) ("Review of a defendant's payroll records is usually the starting point to determine whom the defendant employed during the relevant time period.").  "[A]ll one needs to know about a given employee for a given year is whether the employee started or ended employment during that year and, if so, when.  He is counted as an employee for each working day after arrival and before departure."  *Walters*, 519 U.S. at 211.

The Seventh Circuit has applied these principles in two recent cases.  First, in *Ost v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435 (7th Cir. 1996), the Seventh Circuit held that a plaintiff's affidavit stating that she had "determined that the defendant had at least twelve full time employees and at least twelve part time employees" did not satisfy the requirements of the payroll method, even though the plaintiff claimed to have based her conclusion on a review of time sheets and other business records.  *Id.* at 439-40 (cited with approval in *Mizwicki*, 196 F.3d at 832).  More recently, in *Mizwicki v. Helwig*, the Seventh Circuit affirmed a district court's grant of summary judgment in favor of the defendant because the plaintiff failed to introduce evidence regarding defendant's payroll for the relevant years and instead relied, "without any further documentary proof," on a witness's equivocal testimony that the defendant "may have had" the requisite number of employees.  *Mizwicki*, 196 F.3d at 831-32.  The Court noted that the plaintiff in *Mizwicki* was "in an even weaker position" than the plaintiff in

*Ost* because the witness in that case "never testified to having reviewed timesheets, payroll or any other records before giving his estimate." *Id.* at 832.

The parties agree that the alleged discrimination in this case occurred in 2008 and 2009. Thus, to survive summary judgment, Kutella must provide evidence that Venit employed the requisite number of employees for twenty weeks in 2007, 2008, or 2009. *See Komorowski v. Townline Mini-Mart & Rest.*, 162 F.3d 962, 965-66 (7th Cir. 1998) (interpreting the phrase "current or preceding calendar year"). To support her claim, Kutella relies on Venit's affidavit, her own affidavit, and documents produced by the CME Group, the legal representative of the CME.

Venit states in his affidavit that he employed only five employees in 2007 (Dan Starr, Nicole Pusateri, Brian Morgan, Paul Trainer, and James Urso[1]); six employees in 2008 (Dan Starr, Nicole Pusateri, Brian Morgan, Paul Trainer, James Urso, and Stephanie Kutella); and two employees in 2009 (Dan Starr and Stephanie Kutella). Def.'s LR 56.1 Stat., Ex. 1 at 1-2. Venit also states that Brian Morgan, Paul Trainer, and James Urso worked part-time. *Id.* at 1.

In her affidavit, Kutella states that an additional eleven persons worked for Venit in his trading business "for substantial periods of time during 2007-2009." Pl.'s Resp. to Def.'s LR 56.1 Stat., Ex. 3 at 1. According to her, those persons are: trade checker and runner Jimmy Pusateri; clerk Jamie Ruggio; CME office worker "Amanda"; runners "Jonathan and Jose"; CME office worker "Max"; Danny Venit, the defendant's brother,

---

[1] In his first affidavit, Venit referred to James Urso as "James Urfo." *See* Def.'s LR 56.1 Stat., Ex. 1 at 1. He corrected his spelling in a subsequent affidavit. *See* Def.'s Resp. to Pl.'s LR 56.1 Stat. of Add'l Facts, Ex. D at 2.

4

who "handled a variety of tasks"; "the Defendant's cousin," an aspiring actor who flew into Chicago from Los Angeles every year to handle various tasks; "the Defendant's father," who "handl[ed] a number of responsibilities relating to Venit's trading throughout the duration of [Kutella's] employment"; and traders Jimmy Dailydis and Wally Posner, who "cover[ed] for Venit in his absence from the trading floor, and handle[d] many related tasks." *Id.* at 2-3. Kutella states that "[t]hese individuals worked for Venit during the same period that I was working for him, and I personally observed each of them carrying out tasks for Venit, and getting paid by Venit for their services." *Id.* at 1. In addition, Kutella states that Venit "owned a car wash, at which he employed at least five . . . individuals." *Id.* at 4. She further indicates that Venit "would regularly threaten to employ [her] at the car wash, as a demotion." *Id.*

Finally, Kutella relies on applications for "Non-Member Floor Access Badges" submitted on behalf of Venit for five additional persons. *See* Pl.'s Resp. to Def.'s LR 56.1 Stat., Ex. 2. The CME Group produced the applications in response to a subpoena requesting all documents memorializing "any clerk, trade checker, helper or personal assistant authorized or given clearance to enter the trading floor of the CME by CME trader Martin Venit during 2007, 2008 and 2009." *Id.*, Ex. 1 at 1. The applications consist of the following: a September 2004 floor access application for Joseph Fern listing a "Term Date" of January 4, 2007, *id.*, Ex. 2 at 8-9; an October 2004 floor access application for David Graziano, along with a September 2009 notation stating that Graziano's access was "outdated," *id.* at 6-7; an October 2008 floor access application for David Sternfield, *id.* at 4-5; a December 2009 floor access application for

5

Patrick Anderson, *id.* at 2-3; and an April 2010 floor access application for Gregory Donashovetz, *id.* at 11-12.[2] In a cover letter, the CME Group stated: "Please note that this production shows all employees of Martin Venit that CME Group has a record of during the period of 2007-2009." *Id.*, Ex. 2 at 1.

In response, Venit submits a second affidavit. In it, he states that Patrick Anderson, David Sternfield, and David Graziano were unpaid interns, not employees. *See* Def.'s Resp. to Pl.'s LR 56.1 Stat. of Add'l Facts, Ex. D at 1-2. He also denies employing in his trading business the eleven alleged employees referenced in Kutella's affidavit. *Id.* at 2-4.

The evidence, even if considered in the light most favorable to Kutella, is insufficient to survive summary judgment under the Supreme Court and Seventh Circuit's jurisprudence. First, Kutella's affidavit and the CME Group records likely do not provide a sufficient basis to find that a number of the named persons were Venit's "employees." To qualify as an "employee" under Title VII, a person must have an "employment relationship" with the employer. *Walters*, 519 U.S. at 206; *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 491 (7th Cir. 1997). Independent contractors do not have such a relationship. *Alexander*, 101 F.3d at 492. Nor, under some circuits' precedents, do unpaid interns. *See, e.g.*, *O'Connor v. Davis*, 126 F.3d 112, 115-16 (2d Cir. 1997).

Even assuming, however, that all of the persons identified in Kutella's

---

[2] The CME Group also produced floor access applications for two persons Venit already admitted to employing: Nicole Pusateri and James Urso. *See* Pl.'s Resp. to Def.'s LR 56.1 Stat., Ex. 2 at 13-19.

6

submissions qualify as "employees," Kutella's Title VII claim still fails. She has provided no evidence addressing the time interval during which a number of the identified persons allegedly worked for Venit. Rather, she states only that the eleven identified persons worked for Venit's trading business "for substantial periods of time during 2007-2009." And with respect to Venit's car wash business (assuming for purposes of discussion that employees of that business count), Kutella states only that Venit "employed at least five . . . individuals" and that she "believe[s] the car wash is still in operation." *Id.* at 4. Contrary to the dictate of *Walters*, Kutella does not address when the identified persons started or ended their alleged employment for Venit. In addition, it appears likely from Kutella's own statements that at least some of the referenced persons worked only intermittently for Venit. For example, Kutella counts as an employee Venit's cousin, "an aspiring actor from Los Angeles," who "worked for Venit every year" when Venit flew him into Chicago. Pl.'s Resp. to Def.'s LR 56.1 Stat., Ex. 3 at 3. For these reasons, Kutella's affidavit falls short of what is necessary to permit a reasonable fact finder to determine that Venit employed more than fifteen persons for twenty weeks in 2007, 2008, or 2009.

In fact, Kutella herself did not work for Venit for twenty weeks in 2007, 2008, or 2009. As she concedes, she began her employment in October 2008 and resigned in March 2009. She therefore cannot vouch based on personal observation that Venit employed more than fifteen employees for a longer interval.

The CME Group records that Kutella has offered likewise fail to address the time periods during which the referenced persons allegedly worked for Venit. At least two of the persons referenced in the CME Group records applied for floor access as late as

7

December 2009 and April 2010. Another, Joseph Fern, appears to have been terminated on January 4, 2007. *See* Pl.'s Resp. to Def.'s LR 56.1 Stat., Ex. 2 at 8-9; *see also* Def.'s Resp. to Pl.'s LR 56.1 Stat. of Add'l Facts, Ex. D at 2.

Kutella contends that Venit paid various persons informally and with cash. Based on this contention, the Court assumes that there may never have been formal payroll records for at least some of the persons she claims were employees. Given the possibility of off-the-books employment indicated by Kutella's affidavit, it would be inappropriate to impose a requirement that Kutella provide "payroll records" as such. But this does not excuse her from the requirement to provide evidence that meets the requirements for Title VII coverage established by the statute. Kutella does not suggest that she was deprived of access to information during the discovery process that would have permitted her to attempt to meet the statutory threshold or that such evidence was otherwise unavailable. In fact, as Venit argues, and Kutella does not contradict:

> Plaintiff has had almost eight months to conduct discovery; this Court entered an order on August 31, 2010 setting a discovery closure date of June 4, 2011. Defendant has propounded written discovery, which plaintiff has answered. Plaintiff chose not to propound written discovery on defendant or request a deposition prior to responding to this motion. She had these opportunities available but failed to take advantage of them and must now face the consequences.

Def.'s Reply in Supp. of Mot. for Summ. J. 9. Kutella requested (and received) an extension to obtain the CME Group records prior to filing her opposition to the present motion. She did not, however, request additional time to seek information from any other source.

Kutella counters that the CME Group records demonstrate that Venit lied in his own affidavit and that this establishes a genuine fact question regarding his status as a

8

Title VII employer.  This Court disagrees that the CME Group records support an inference of untruthfulness.  The records consist of applications for floor access, not proof of employment.  Venit states in his second affidavit that three of the five persons named in the applications worked as unpaid interns rather than employees, he hired the fourth in 2010, and he terminated the fifth in January 2007.  Kutella provides no evidence to the contrary.

Even were the Court to agree that the records provide some evidence of Venit's untruthfulness, that would not defeat Venit's motion for summary judgment.  "[W]hen challenges to witness' credibility are all that a plaintiff relies on, and [s]he has shown no independent facts – no proof – to support h[er] claims, summary judgment in favor of the defendant is proper."  *Springer v. Durflinger*, 518 F.3d 479, 485 (7th Cir. 2008); *see also Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir. 1998) ("[T]he prospect of challenging a witness' credibility is not alone enough to avoid summary judgment.").

Kutella cites *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712 (7th Cir. 2005), for a contrary proposition.  *Rudin* is inapposite.  In that case, the Seventh Circuit noted that a fact finder's "disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity), may . . . suffice to show intentional discrimination."  *Id.* at 726 (citation and internal quotation marks omitted).  The Court's holding related to the specific requirements for proving pretext in a discrimination case.  *Rudin* does not support the proposition that evidence of a defendant's untruthfulness establishes a genuine issue of material fact regarding his

9

status as a Title VII employer.

In sum, Kutella has failed to provide evidence from which a reasonable jury could find that Venit employed the requisite number of employees in 2007, 2008, or 2009 and thus qualifies as a Title VII employer. The Court accordingly grants summary judgment in favor of Venit on Kutella's Title VII claim.

## Conclusion

For the reasons stated above, the Court grants defendant's motion for summary judgment on count 1 of plaintiff's second amended complaint [docket no. 46].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 29, 2011